UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

TIDE NATURAL GAS STORAGE I, L.P. and
TIDE NATURAL GAS STORAGE II, L.P.,

                Plaintiffs/Counterclaim
                Defendants,

        -against-                                  <u>Opinion & Order</u>
                                                       10 CV 5821

FALCON GAS STORAGE COMPANY, INC.;

                Defendant/Counterclaim
                and Crossclaim Plaintiff,

ARCAPITA BANK B.S.C.; and ARCAPITA,
INC.;

                Defendants,

and HSBC BANK USA, NATIONAL
ASSOCIATION,

                Defendant/Crossclaim
                Defendant.
_____

KIMBA M. WOOD, U.S.D.J.:

        Pursuant to Rule 60 of the Federal Rules of Civil Procedure and Local Rule 6.3,

Defendants Falcon Gas Storage Company, Inc. ("Falcon"), Arcapita Bank, B.S.C.(c) and

Arcapita, Inc. ("Arcapita") (collectively, "Defendants") move for reconsideration of the

portion of this Court's September 28, 2011 Order that: (1) denied Defendants' partial

summary judgment motion for a declaratory judgment ordering the escrowed funds to be

disbursed to Falcon; and (2) denied Defendants' partial summary judgment dismissing

Plaintiffs Tide Natural Gas Storage I, L.P. and Tide Natural Gas Storage II, L.P.'s

(collectively, "Tide")  request for a permanent injunction restraining the disbursement of

escrowed funds. *Tide Natural Gas Storage I, L.P. v. Falcon Gas Storage Co., Inc.* (the "September 28, 2011 Order"), 10 CV 5821, 2011 WL 4526517 (S.D.N.Y. Sept. 28, 2011).

For the reasons stated below, the motion for reconsideration is denied.

## BACKGROUND

### I.   The Underlying Dispute

On March 15, 2010, Tide and Falcon entered into a Purchase Agreement, whereby Falcon agreed to sell its entire interest in Nortex Gas Storage Company, LLC ("Nortex") to Tide for $515 million. (Compl. ¶¶ 12-13.) Two days before the closing of the deal, a group of minority shareholders filed lawsuits in Texas courts (collectively, the "Hopper Litigation"), in an attempt to stop the transaction from closing. (Plaintiff's Response to Defendants' Statement of Undisputed and Material Facts Pursuant to Rule 56.1 ("Pl.'s 56.1 Resp.") ¶ 15.) The Hopper Litigation plaintiffs also filed notices of *lis pendens*, in connection with their lawsuits. (Id. ¶ 18.)

Consequently, the parties agreed to place $70 million of the purchase price into an escrow account (the "Escrow Account") with HSBC Bank USA, National Association ("HSBC") as protection against any expenses or liability Tide might incur as a result of the Hopper Litigation. (Id. ¶¶ 24, 36.) On April 1, 2010, the parties executed an Amended Purchase Agreement in tandem with an Escrow Agreement: Section 3.7(a) of the Amended Purchase Agreement governs the disbursement of the monies escrowed with HSBC. Section 3.7(a) provides that Tide and Falcon "shall deliver to [HSBC] joint instructions to disburse the balance of the Escrowed Amount" upon the occurrence of either one of the following two conditions:

> (i)     a final non-appealable order of each court of competent
> jurisdiction with respect to the Hopper Claim or
> (ii)    (A) an agreed dismissal with prejudice of the Hopper Claim . . . ,
>         (B) a complete release by all of the Participants under the Hopper
> Claim . . . , and
>         (C) the final non-appealable release or expungement of the Lis
> Pendens . . . .

(Declaration of Jeremiah J. Anderson, dated Aug. 31, 2010, Ex. B, Amended Purchase

Agreement § 3.7(a).) On April 1, 2010, with the abovementioned agreements in place, the

Nortex transaction closed. (Pl.'s 56.1 Resp. ¶ 35.)

On July 27, 2010, Falcon and the Hopper Litigation plaintiffs reached a

settlement, pursuant to which the Hopper Litigation plaintiffs filed nonsuits in each of the

courts in which their actions were pending. (Id. ¶ 39.) Subsequently, the Court in

Eastland County entered an order expunging the notices of *lis pendens*. (Id. ¶¶ 40, 42.)

Tide filed the instant action against Falcon and Arcapita on August 2, 2010. (Dkt.

No. 1.)

## II. Procedural History

Tide's complaint contains four causes of action arising out of alleged

misstatements made by Defendants in connection with the Nortex sale. Tide alleges: (1)

fraudulent misrepresentation; (2) breach of warranty; (3) breach of contract; and (4)

violation of Section 10 and Rule 10b-5 of the Securities Exchange Act of 1934. (Compl.

¶¶ 10-11.) In addition, Tide seeks a permanent injunction preventing Falcon and HSBC

from disbursing any funds from the Escrow Account, except pursuant to Section 3.7 of

the Amended Purchase Agreement.

Defendants answered Tide's complaint, and Falcon filed a Counterclaim and Crossclaim, seeking, *inter alia*, a declaratory judgment ordering the disbursement of the funds in the Escrow Account.

Defendants Falcon and Arcapita, pursuant to Federal Rule of Procedure 12(c), filed a motion for judgment on the pleadings to dismiss Claims I through IV of Tide's complaint. Defendants also moved for partial summary judgment on two claims: (1) Falcon's first cause of action of its Counterclaim and Crossclaim, requesting a judgment declaring that HSBC must disburse the escrowed funds to Falcon; and (2) Tide's request for a permanent injunction restraining the disbursement of the escrow funds. In its September 28, 2011 Order, the Court denied each of Defendants' motions. *Tide*, 2011 WL 4526517, at *15.

## DISCUSSION

### I. Defendants' Motion for Reconsideration

A. <u>Legal Standard</u>

Local Rule 6.3 provides that a party may submit a motion for reconsideration "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Local R. 6.3. The "major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Plugh*, 648 F.3d 118, 123-24 (2d Cir. 2011) (quotation marks and citation omitted). Reconsideration may be granted where the moving party can point to matters "that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

A Court should not grant a motion for reconsideration in order to allow a party to "advance new facts, issues or arguments not previously presented to the Court." *Williams v. Smith*, 02 CV 4558, 2009 WL 5103230 at *1 (S.D.N.Y. Dec. 23, 2009) (Cote, J.) (quotation marks and citation omitted). Similarly, a "motion to reconsider should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided." *Shrader*, 70 F.3d at 257.

B. <u>Discussion</u>

The Defendants ask the Court to reconsider only the portion of its September 28, 2011 Order denying Defendants' motion for partial summary judgment on: (1) Falcon and Arcapita's request for a declaratory judgment ordering the disbursement of the escrowed funds; and (2) Tide's request for a permanent injunction restraining the escrowed funds. The Court considers each in turn.

Defendants argue that the Court has overlooked "the fact that the escrow was created for a purpose entirely separate and unrelated to plaintiff's fraud claims." (Memorandum of Law in Support of Defendants' Motion for Reconsideration ("Defs.' Mem.") at 2.) However, the relatedness of the agreements was considered by this Court in its September 28, 2011 Order. *Tide*, 2011 WL 4526517, at *13 ("Section 3 of the Escrow Agreement, entitled 'Distributions from the Escrow Account,' states that the Escrowed Amount 'shall be . . . transferred only in accordance with Section 3.7 of the [Amended Agreement].'"). Defendants seek to reargue the merits of this Court's previous decision, and present no controlling decisions or facts which the Court did not already consider. Accordingly, the Court dismisses Defendants' motion for reconsideration of their request for a declaratory judgment.

Even if Defendants had met the strict standard required for reconsideration, their claim fails. The Amended Purchase Agreement and the Escrow Agreement are interconnected.  Each agreement was entered into in conjunction with the other, each agreement references the other, and neither agreement can stand alone. It is true, as Defendants point out, that the funds were placed in escrow as a response to the Hopper Litigation.  (Defs.' Mem at 5.) Nevertheless, the conditions of the escrow release are incorporated into the Purchase Agreement through the First Amendment to that Agreement, entered into on April 1, 2010. The Escrow Agreement itself does not provide instructions for the withdrawal and transfer of the escrowed funds, but refers to Section 3.7 of the Amended Purchase Agreement. Thus, the release of the escrowed funds is part and parcel of the Amended Purchase Agreement. The agreements are interdependent— neither would have been entered into without the other—and thus the distribution of the funds in the Escrow Account is intertwined with Tide's underlying fraud claims related to the Amended Purchase Agreement.

Defendants' contention that the parties had not contemplated an Escrow Agreement at the time they entered into the original Purchase Agreement is not persuasive, because the transaction itself was governed by the Amended Purchase Agreement, not the original Purchase Agreement. Defendants clearly contemplated the Escrow Agreement at the time they entered into the Amended Purchase Agreement because the Amended Purchase Agreement governs the distribution of the escrowed funds.

Defendants also argue that because Tide's fraud claims arise out of breaches of Sections 4.9 and 4.11 of the Amended Purchase Agreement, rather than Section 3.7,

"Tide's allegations of fraud have nothing to do with . . . the escrow." (Defs.' Mem. at 4.) Tide, however, alleges fraud in the inducement of the entire Amended Purchase Agreement. Because the terms of the Amended Purchase Agreement govern the distribution of the escrowed funds, Tide's remaining performance under Section 3.7 of the Amended Purchase Agreement may be excused pending resolution of Tide's claims that the Amended Purchase Agreement was fraudulently induced.

Defendants also argue that "the escrow conditions have been met" and that therefore "the escrow must be released." (Defs. Mem. at 6.) In its September 28, 2011 Order, the Court also addressed this issue, finding that Tide had sufficiently alleged fraud in the inducement of the Amended Purchase Agreement and recognizing the settled law that a party may not compel performance of an agreement that was induced by fraud. *Tide*, 2011 WL 4526517, at *14 ("Because Tide has come forward with evidence that would allow a reasonable jury to find, by clear and convincing evidence, that each of the elements of fraud has been satisfied, Falcon is not, at least at this juncture, entitled to the declaratory relief it seeks.").

Thus, even considering the request for a declaratory judgment on the merits, the Court comes to the same conclusion, that it must be denied pending adjudication of Tide's claims that the whole Amended Purchase Agreement was fraudulently induced.

Defendants also ask this Court to reconsider its decision denying their motion for summary judgment on Tide's request for a permanent injunction restraining the escrowed funds. The issue raised in Defendants' motion was fully considered and decided by this Court in its September 28, 2011 Order. *Tide*, 2011 WL 4526517, at *11 ("Unless and until Tide moves for an injunction, Falcon's and Arcapita's motion for summary

judgment is premature."). Tide's complaint has established viable claims under its first

four causes of action. If those claims are ultimately successful and Tide can establish

Defendants' liability, at that point Tide could request a permanent injunction. *Chiste v.*

*Hotels.com L.P.*, 756 F. Supp. 2d 382, 407-08 (S.D.N.Y. 2010) (McMahon, J.).

Foreclosing that potential remedy at this preliminary stage would be premature.

Defendants have failed to identify any controlling decisions or data which would merit

reconsideration of this conclusion.

## CONCLUSION

For the reasons stated above, Defendants' motion for reconsideration is DENIED.

SO ORDERED.

DATED:      New York, New York
            May __4__, 2012

_____
KIMBA M. WOOD
United States District Judge